IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| KRISHNA L. SALMON,<br><br>                Plaintiff,<br><br>v.<br><br>APPLEGATE HOMECARE & HOSPICE,<br>LLC,<br><br>                Defendant. | **MEMORANDUM DECISION AND<br>ORDER GRANTING MOTION FOR<br>SUMMARY JUDGMENT**<br><br>Case No.1:13-cv-00109-DN<br><br>District Judge David Nuffer |

Defendant Applegate Homecare & Hospice, LLC ("Defendant") filed a motion for summary judgment[1] ("Motion") requesting dismissal of all of Plaintiff Krishna L. Salmon's ("Ms. Salmon") claims.  Ms. Salmon's Complaint[2] alleges three claims: (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act (the "PDA");[3] (2) gender discrimination in violation of the Utah Antidiscrimination Act ("UADA");[4] and (3) interference with rights created by the Family and Medical Leave Act of 1993 ("FMLA").[5]  In opposition, Ms. Salmon contends that summary judgment is inappropriate because "there are genuine issues of material fact and that Defendant has misstated the law governing Salmon's causes of action."[6]  After a careful review of the

---

[1] Defendant Applegate Homecare & Hospice, LLC's Motion for Summary Judgment with Supporting Points and Authorities ("Motion"), docket no. 30, filed December 15, 2015.

[2] Complaint, docket no. 2, filed August 6, 2013.

[3] *See* 42 U.S.C. § 2000e(k).

[4] *See* Utah Code Ann. 34A-5-101 *et seq.*

[5] *See* 29 U.S.C. § 2601 *et seq.*

[6] Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and Request for Hearing at 2 ("Opposition"), docket no. 37, filed April 24, 2015.

written memoranda submitted by the parties, oral argument is unnecessary since the Motion may

be readily decided on the written submissions.[7]

UNDISPUTED FACTS ............................................................................................................. 2
SUMMARY JUDGMENT STANDARD ................................................................................. 7
DISCUSSION ............................................................................................................................ 8
    A.    Ms. Salmon's Gender Based Discrimination Claim Fails ..................................... 8
        1.    Direct Evidence of Discrimination ........................................................... 9
        2.    Indirect Evidence of Discrimination ....................................................... 13
            (a)    *Ms. Salmon has failed to show that there is a genuine dispute of*
                    *material fact regarding the falsity of Defendant's reason for the*
                    *adverse employment action* ........................................................ 15
            (b)    *Ms. Salmon has failed to show that there is a genuine dispute of*
                    *material fact that Defendant acted contrary to an unwritten policy*
                    *or contrary to a company practice.* ............................................ 18
    B.    Ms. Salmon's FMLA Claim Fails ......................................................................... 20
    C.    Ms. Salmon's UADA Claim Fails ........................................................................ 21
ORDER ..................................................................................................................................... 24

## UNDISPUTED FACTS

The following facts are taken largely from Defendant's Motion.  These facts are

undisputed based on Ms. Salmon's express admission of Defendant's proposed undisputed facts,

or because Ms. Salmon has not actually denied the fact and has not offered any evidence to

dispute Defendant's properly supported undisputed facts.[8]  Where facts offered by Defendant

were properly disputed in Ms. Salmon's response, those disputes have been removed by editing

and the undisputed portions remain.

    1.    Applegate's job description for its CNA position (the "Job Description") states

that the CNA position "[r]equires full range of body motion," that the physical demands and

---

[7] *See* DUCivR 7–1(f).

[8] *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by
Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

working conditions of the job require the "handling and lifting of clients," and that a CNA "[o]ccasionally lifts and carries items weighing up to 50 pounds or greater."[9]

    2.       The duties listed in the Job Description include assisting with ambulation, providing physical support, moving patients to and from their bed or a chair, changing patient positions, correcting body alignment, making occupied beds, helping with bathing and personal hygiene procedures, assisting patients to the toilet and in the use of the toilet, and other services. A CNA is required to do these duties and handle the physical demands of the job.[10]

    3.       Salmon performed these duties at Applegate. Salmon testified that part of her job duties included assisting patients in and out of the shower and stabilizing them, changing bedding, taking patients to the bathroom and helping them on and off the toilet, ambulation, helping patients transfer in and out of chairs and in and out of bed, and other tasks as directed.[11]

    4.       Applegate deemed all of these duties to be essential functions of the CNA job.[12]

    5.       In December 2011, Salmon informed her supervisor that she was pregnant. . . . Salmon continued working as a CNA for the company after Applegate knew that she was pregnant.[13]

    6.       In January 2012, Salmon's doctor restricted her from lifting 25 pounds or more. Salmon notified her supervisor of the lifting restriction and gave her supervisor the doctor's note setting forth the lifting restriction.[14]

---

[9] Motion at vi, ¶ 1; Opposition at 3 (undisputed).

[10] Motion at vi, ¶ 2; Opposition at 3 (undisputed).

[11] Motion at vi, ¶ 3; Opposition at 3 (undisputed).

[12] Motion at vii,¶ 4; Opposition at 3 (Ms. Salmon attempts to dispute this fact by stating: "Just because Defendant deems the ability to lift at least 50 pounds an essential job function of Salmon's job, does not make it so." Her response does not controvert the fact that Applegate deemed all of the duties listed in ¶ 3 to be essential functions of the CNA job. Therefore, this fact is taken as undisputed for purposes of summary judgment.).

[13] Motion at vii, ¶ 6; Opposition at 3 (Per Ms. Salmon's request, the phrase "[b]ecause Applegate does not prohibit pregnant CNAs from working" has been removed).

7.     Upon learning of the lifting restriction, Salmon's supervisor, Kim Olsen, told Salmon that the restriction made it impossible for her to perform her job, and that she could either take FMLA leave or be terminated.  At the time, there were no light duty positions available at Applegate.[15]

8.     Salmon elected to take FMLA leave.  Her physician submitted documentation confirming the lifting restriction and certifying that Salmon was unable to perform her job functions.[16]

9.     Salmon claims that the patients she saw on a regular basis in January 2012 did not normally require her to lift over 25 pounds.  She admits, however, that she could not anticipate every situation or if or when her work environment might change.[17]

10.     Salmon's application for FMLA was approved for 12 weeks.  Salmon's FMLA leave began February 15, 2012 and was scheduled to end May 9, 2012.[18]

11.     The Designation Notice approving the leave stated that Salmon would need to present a fitness-for-duty certificate to be restored to employment.[19]

12.     On or about April 30, 2012, as Salmon's FMLA leave was coming to an end, Olsen contacted Salmon and asked about her status and her plans for returning to work, and if anything had changed with respect to her lifting restriction.[20]

---

[14] Motion at vii, ¶ 7; Opposition at 3 (undisputed).

[15] Motion at vii, ¶ 8; Opposition at 3 (undisputed as to the first sentence.  Ms. Salmon disputes the second sentence: "At the time, there were no light duty positions available at Applegate." Ms. Salmon states that "based on the facts stated below, Salmon disagrees with the last sentence." Ms. Salmon does not cite to what facts she is referring to, nor was the Court able to find a fact that creates a dispute. Without more, this fact is undisputed. *See* DUCivR 56-1(c)(2)(B) ("If a fact is disputed, so state and concisely describe and cite with particularity the evidence on which the non-moving party relies to dispute that fact (without legal argument).")).

[16] Motion at vii, ¶ 9; Opposition at 3 (undisputed).

[17] Motion at viii, ¶ 11; Opposition at 4 (undisputed).

[18] Motion at viii, ¶ 13; Opposition at 4 (undisputed).

[19] Motion at viii, ¶ 14; Opposition at 4 (undisputed).

13.     Because the lifting restriction [with some modification] was to continue in effect after her FMLA leave ended, which would prevent Salmon from performing some essential job functions, Applegate determined that Salmon could not return to work.[21]

14.     Applegate did not have any light duty positions available at that time.[22]

15.     Applegate notified Salmon that, at the end of the FMLA leave, her employment would be terminated.[23]

16.     Salmon's employment was terminated effective May 11, 2012.[24]

17.     Applegate's stated reason for terminating Salmon's employment was that the lifting restriction imposed by her doctor made her unable to perform the essential duties of her job and because Applegate did not have a light duty position available.[25]

18.     Stephanie Bonin ("Bonin"), a biomechanical engineer at MEA Forensic Engineers and Scientists who is serving as Applegate's expert in this case, has testified that "patient handling tasks described in the Job Description for Salmon's CNA position and in Salmon's deposition require lifting loads significantly greater than 25 pounds."[26]

---

[20] Motion at viii, ¶ 15; Opposition at 4 (undisputed).

[21] Motion at ix, ¶ 16; Opposition at 4 (Ms. Salmon agrees with this fact, but adds "that the lifting restriction had been modified and that Defendant did not believe that the modification made any difference." The fact has been edited to include this additional information).

[22] Motion at ix, ¶ 17; Opposition at 4 (Ms. Salmon attempts to dispute this fact by stating that: "Defendant [*sic*] was told that other options were not available because Defendant was afraid of liability should Salmon miscarry." Her response does not controvert the fact that Applegate did not have any light duty positions available at the time Ms. Salmon's FMLA leave was about to end. Therefore, this fact is taken as undisputed for purposes of summary judgment.).

[23] Motion at ix, ¶ 18; Opposition at 4 (undisputed).

[24] Motion at ix, ¶ 19; Opposition at 4 (undisputed).

[25] Motion at ix, ¶ 21; Opposition at 5 (Ms. Salmon attempts to dispute this fact by stating: "Dispute this statement for the reasons stated above." Such a blanket assertion without more is insufficient to create a dispute of fact. *See* DUCivR 56-1(c)(2)(B) ("If a fact is disputed, so state and concisely describe and cite with particularity the evidence on which the non-moving party relies to dispute that fact (without legal argument).")).

[26] Motion at x, ¶ 23; Opposition at 5 (Ms. Salmon agrees that this is Ms. Bonia's declaration).

19.     As Bonin testified, even when using assistive devices, like walking belts or patient handling slings, a single caregiver transferring a patient between a wheelchair and a bed or between a wheelchair and a shower chair can experience loads over 40 pounds.  Loads during a patient repositioning task can exceed 80 pounds.  During a two-person transfer out of bed, lifting loads can be over 30 pounds per caregiver.  And if a patient lacks the strength to independently transfer, such as lifting himself off of the toilet, a single caregiver can potentially lift as much as half the patient's body weight while assisting.  Loads experienced by a caregiver can become higher with unexpected movements such as loss of balance or stumbling.[27]

20.     Bonin also testified that Salmon would most likely experience lifting loads greater than 25 pounds while conducting the patient handling tasks described in her deposition testimony and listed in the job description.[28]

21.     On August 20, 2012, Salmon filed a charge of discrimination against Applegate with the [Utah Anti-discrimination and Labor Division ("UALD")].[29]

22.     On March 26, 2013, Salmon filed a Withdrawal of the Charge of Discrimination and Request for Notice of Right to Sue, requesting a termination of the administrative process.[30]

23.     Pursuant to that request, Salmon's administrative case was closed on March 28, 2013, and on May 8, 2013, the EEOC sent Salmon a Notice of Right to Sue.[31]

24.     Salmon commenced this case on August 5, 2013, alleging a violation of Title VII based on the same acts upon which she brought her UADA claim.[32]

---

[27] Motion at x, ¶ 24; Opposition at 5 (Ms. Salmon agrees that this is Ms. Bonia's declaration).

[28] Motion at xi, ¶ 25; Opposition at 5 (Ms. Salmon agrees that this is Ms. Bonia's declaration).

[29] Motion at xi, ¶ 28; Opposition at 5 (undisputed).

[30] Motion at xii, ¶ 29; Opposition at 5 (undisputed).

[31] Motion at xii, ¶ 30; Opposition at 5 (undisputed).

[32] Motion at xii, ¶ 31; Opposition at 5 (undisputed).

25.     Applegate deemed the duties listed in the Job Description and the duties listed by Salmon in her deposition to be essential functions of the CNA job.[33]

26.     Applegate's expert witness has explained that some tasks involve lifting loads of over 25 pounds, and Salmon concedes that some tasks may require lifting over 25 pounds.[34]

27.     If Salmon had not taken FMLA leave, she would have been terminated by Applegate in February 2012 due to Applegate's belief that she could not do her job.[35]

28.     Salmon has not alleged that Applegate fired her because she took FMLA leave.[36]

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[37] When analyzing a motion for summary judgment, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[38]   However, "the nonmoving party must present more than a scintilla of evidence in favor of his position."[39]   A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[40]

---

[33] Motion at xiii, ¶ 33; Opposition at 6 (undisputed).

[34] Motion at xiii, ¶ 34; Opposition at 6 (undisputed).

[35] Motion at xiii, ¶ 35; Opposition at 6 (undisputed).

[36] Motion at xiii, ¶ 36; Opposition at 6 (undisputed).

[37] Fed. R. Civ. P. 56(a).

[38] *Mathews v. Denver Newspaper Agency LLP,* 649 F.3d 1199, 1204 (10th Cir. 2011) (citation and internal quotations omitted).

[39] *Ford v. Pryor,* 552 F.3d 1174, 1178 (10th Cir. 2008) (citations omitted).

[40] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also Kerber v. Qwest Group Life Ins. Plan,* 647 F.3d 950, 959 (10th Cir. 2011).

**DISCUSSION**

**A.  Ms. Salmon's Gender Based Discrimination Claim Fails**

Ms. Salmon's gender based discrimination claim is brought pursuant to Title VII of the

Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA").  Title VII

prohibits, among other things, unlawful discrimination "against any individual with respect to . .

. terms, conditions, or privileges of employment, because of such individual's . . . sex."[41]  In

1978, Congress passed the PDA, which added section (k) to Title VII's definitions subsection:

> The term "because of sex" or "on the basis of sex" include, but are not limited to,
> because of or on the basis of pregnancy, childbirth, or related medical conditions;
> and women affected by pregnancy, childbirth, or related medical conditions shall
> be treated the same for all employment-related purposes, including receipt of
> benefits under fringe benefit programs, or other persons not so affected but
> similar in their ability or inability to work . . . .[42]

The amendment was added "to prevent the differential treatment of women in all aspects

of employment based on the condition of pregnancy."[43]  The amendment requires "[a]n

employer . . . to treat an employee temporarily unable to perform the functions of her job because

of her pregnancy-related condition in the same manner as it treats other temporarily disabled

employees . . . ."[44]

In this case, Ms. Salmon claims she was discharged because of her pregnancy in violation

of Title VII.  "Claims brought under the PDA are analyzed in the same way as other Title VII

---

[41] 42 U.S.C. § 2000e-2(a)(1).

[42] 42 U.S.C. § 2000e(k); *see E.E.O.C. v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1190–91 (10th Cir.2000).

[43] *E.E.O.C. v. Ackerman, Hood & McQueen, Inc.,* 956 F.2d 944, 947 (10th Cir. 1992) (internal quotation marks and citation omitted).

[44] *See* 29 C.F.R. § 1604, Appendix to Part 1604—Questions and Answers on the Pregnancy Discrimination Act, Public Law 950555, 92 Stat. 2076 (1978).

claims of disparate treatment."[45]  "To prevail under Title VII, a plaintiff must show, through either direct or indirect evidence, that the discrimination complained of was intentional."[46]

### 1.  Direct Evidence of Discrimination

"Direct evidence is '[e]vidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.'"[47]  Ms. Salmon contends that direct evidence of intentional discrimination exists.[48]  Specifically, Ms. Salmon claims that she was told that the reason she could not continue to work "was because Defendant was afraid of liability should Salmon have a miscarriage of her pregnancy."[49]  This statement ("Liability Statement") is disputed.[50]

According to Ms. Salmon, this discriminatory statement was made after she notified her supervisor, Kim Olsen, of her lifting restriction.  Ms. Olsen told her that the restriction made it impossible for her to perform her job, and gave her the option of either taking FMLA leave or being terminated.[51]  Ms. Salmon states that she "told Kim that all . . . [her] current patients did not require any meaningful lifting and, should any future patients require lifting contrary to the restrictions of . . . [her] doctor, . . . [she] could switch patients with other CNA employees or have someone assist . . . [her] in lifting."[52]  Ms. Salmon asserts that in response, Ms. Olsen told her "that such a proposal was not an option because there would be too much liability on

---

[45] *Horizon/CMS Healthcare Corp.,* 220 F.3d at 1191 (citing *Ackerman, Hood & McQueen, Inc.,* 956 F.2d at 947).

[46] *Id.*

[47] *Shorter v. ICG Holdings, Inc.,* 188 F.3d 1204, 1207 (10th Cir.1999) (quoting *Black's Law Dictionary* 460 (6th ed.1990)), *overruled in part on other grounds by* D*esert Palace, Inc. v. Costa,* 539 U.S. 90 (2003).

[48] Opposition at 2.

[49] *Id.* at 6, ¶ 1 (citing the Declaration of Krishna L. Salmon at 2–3, ¶ 9 ("Salmon's Declaration")).

[50] Opposition at 6, ¶ 1; Reply Memorandum in Support of Applegate Homecare & Hospice, LLC's Motion for Summary Judgment ("Reply"), docket no. 41, filed May 21, 2015 (disputed as a sham fact).

[51] Undisputed Facts ¶ 27.

[52] Salmon's Declaration at 2, ¶ 8.

Defendant should [Ms. Salmon] have a miscarriage."[53]  This is the critical disputed statement which Ms. Salmon claims is direct evidence of intentional discrimination.

Defendant argues that the Liability Statement should be disregarded because it is an attempt to create a "sham fact" issue.[54]

The Tenth Circuit has held "that there are situations where a district court may be justified in disregarding certain contradictory testimony, noting that 'courts will disregard a contradictory affidavit when they conclude that it constitutes an attempt to create a *sham fact issue.*'"[55]  The rational for such a holding is the "conclusion that the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony."[56]

When evaluating an affidavit under this rule, three factors must be considered, whether: "(1) the affiant was cross-examined during [her] earlier testimony; (2) the affiant had access to the pertinent evidence at the time of [her] earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain."[57]  Ms. Salmon's deposition was taken on June 6, 2014. Ms. Salmon testified:

> Q. Do you have any direct evidence that Applegate discriminated against you because you were pregnant?
>
> Mr. Olson: Objection. Calls for a legal conclusion.

---

[53] *Id.* at 2–3, ¶ 9.

[54] Reply at 4–5.

[55] *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001).

[56] *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986) (citation omitted).

[57] *Ralston*, 275 F.3d at 973 (quoting R*ios v. Bigler*, 67 F.3d 1543, 1551 (10th Cir. 1995)).

Q. You can still answer.

A. Will you rephrase it?

Q. Sure. Do you have any direct evidence that Applegate discriminated against you intentionally because you were pregnant?

A. I'm having a hard time figuring out how to answer that. I guess I'm not understanding. You mean --

Q. Sure. So do you have any evidence that they fired you for any other reason than because of the lifting restriction?

A. No.

Q. Do you have any direct evidence, whatever that might be -- someone saying something derogatory against you because you're pregnant, saying things about pregnant women shouldn't work in this business, anything like that? Direct evidence about that?

A. No.[58]

Ms. Salmon's deposition testimony is inconsistent with her averment at paragraph nine of her declaration—that Ms. Salmon could not continue working "because there would be too much liability on Defendant should . . . [Ms. Salmon] have a miscarriage."[59]  At her deposition, she made no such statement.  And her employer's counsel directly asked her whether there was any reason given for her termination other than her lifting restriction.  Her answer was an unequivocal no.  Her employer's counsel further expanded on the question by providing Ms. Salmon examples of what might be considered direct evidence of discrimination due to her pregnancy.  "Do you have any direct evidence, whatever that might be -- someone saying something derogatory against you because you're pregnant, saying things about pregnant women

---

[58] Krishna L. Salmon's Deposition at 48:19–49-17 ("Salmon's Deposition"), docket no. 37-1, filed April 24, 2015.

[59] Salmon's Declaration at 2–3, ¶ 9.

shouldn't work in this business, anything like that?  Direct evidence about that?"[60]  Again, Ms. Salmon answered that there was no other direct evidence.

Prior to her deposition testimony, Ms. Salmon was also asked in interrogatories to "[s]tate the factual basis upon which you rely in making the allegation that you were discriminated against on the basis of your gender/pregnancy in connection with the termination of your employment with Applegate, in violation of Title VII . . . ."[61]  In response, Ms. Salmon stated: "I was forced to take leave and terminated because of lifting restrictions, which were a direct resulting [sic] of my pregnancy."[62]  Again, there was no mention of the Liability Statement that Ms. Salmon now relies on in her opposition memorandum to Summary Judgment.

Under the three factors mentioned above, Ms. Salmon's declaration is an attempt to create a "sham" issue of fact.  First, it is undisputed that Ms. Salmon was cross-examined by her counsel during her deposition.[63]  Ms. Salmon's counsel were free to further develop the record during cross-examination had they chosen to do so.  Second, the declaration is not based on newly discovered evidence, but instead is based on Ms. Salmon's memory of the events that took place in February 2012.  Ms. Salmon had access to this information at the time of her earlier testimony, and one would expect her memory to be better during her deposition in June 2014 than her declaration almost a year later in April 2015.  Finally, Ms. Salmon's declaration does not attempt to explain any confusion that may have existed when she was deposed.  To the contrary, Ms. Salmon did not hesitate, during her deposition, to ask for clarification of the question posed before she gave her answer.  Ms. Salmon is attempting to create a sham issue of

---

[60] Salmon's Deposition at 49:11-16.

[61] Plaintiff's Responses to Defendant's First Set of Discovery to Plaintiff at 10–11 ("First Set of Discovery"), docket no. 37-1, filed April 24, 2015.

[62] Id.

[63] Salmon's Deposition at 50:6–51:17.

fact by changing her deposition testimony through a declaration attached to her summary judgment opposition.  The Liability Statement in Ms. Salmon's declaration is disregarded, and therefore, no direct evidence of discrimination exists.

## 2.  Indirect Evidence of Discrimination

Absent direct evidence of discrimination, the shifting burden of proof analysis initially articulated in *McDonnell Douglas Corp. v. Green*,[64] must be applied.  Under the *McDonnell Douglas* analysis:

> [A plaintiff] must first meet her initial burden of establishing a prima facie case of discrimination.  Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision.[65]  "At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual-i.e. unworthy of belief."[66]  If the plaintiff succeeds both in making out a prima facie case of discrimination and in showing that defendant's reasons are pretextual, plaintiff's claim will withstand summary judgment.[67]

In order to make out a prima facie case of a pregnancy discrimination discharge claim[68] under Title VII, Ms. Salmon must demonstrate "1) that she was a member of a protected class; (2) that she was qualified and performing her job satisfactorily; and (3) that she was discharged under circumstances that give rise to an inference of discrimination."[69]  Ms. Salmon may satisfy

---

[64] 411 U.S. 792 (1973).

[65] *Id. at* 802. .

[66] *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir. 1995).

[67] *Dodd v. Riverside Health Sys., Inc.*, 76 F.3d 392 (10th Cir. 1996) (citing *Randle,* 69 F.3d at 451).

[68] *See Plotke v. White,* 405 F.3d 1092, 1099 (10th Cir. 2005) ("[T]he articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged.").

[69] *Pierson v. Mrs. Fields Cookies*, 857 F. Supp. 867, 871 (D. Utah 1994).

the third element of her prima facie burden by presenting evidence that she was treated less favorably than others "similar in their ability or inability to work."[70]

It is undisputed that Ms. Salmon was a member of a protected class—she was pregnant at the time of her termination.  The parties, however, dispute the second and third elements of Ms. Salmon's prima facie case.  Because Ms. Salmon cannot establish that Defendant's reason for terminating her employment was pretextual, it will be assumed, without deciding, that Ms. Salmon has established a prima facie case of discrimination.

Having found that a prima facie case has been established, the burden of production shifts to Defendant to provide a non-discriminatory reason for terminating Ms. Salmon's employment.  "[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion."[71]  Defendant is required only to "explain its actions against the plaintiff in terms that are not facially prohibited by Title VII."[72]  Defendant has presented evidence that it believed that Ms. Salmon's lifting restriction prevented her from performing the essential functions of her position.[73]  And, Defendant did not have any light duty positions available that Ms. Salmon could perform.[74]  Because Defendant has articulated a non-discriminatory reason for its actions, and its articulated reasons are not "facially prohibited by Title VII," Defendant has satisfied its burden.

---

[70] 42 U.S.C § 2000e(k); *see generally Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005); *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192, 1194 (10th Cir. 2000); *Leeker v. Gill Studios, Inc.*, 21 F. Supp. 2d 1267, 1272 (D. Kan. 1998); *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1380 (10th Cir.1994).

[71] *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1317 (10th Cir. 1992).

[72] *Id.*

[73] Motion at 6.

[74] *Id.*

The burden now shifts to Ms. Salmon "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief."[75]  "A plaintiff can show pretext by revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'"[76]  "[A]s a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual."[77]

> A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false . . . ; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances . . . ; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.  A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees . . . .[78]

Ms. Salmon makes two arguments in support of her claim that Defendant's justification for her discharge is pretextual.  First, she argues that the reason for her termination—that her lifting restriction made her unqualified to perform her job—is false. And second, she was treated differently from other similarly-situated employees.

(a)    *Ms. Salmon has failed to show that there is a genuine dispute of material fact regarding the falsity of Defendant's reason for the adverse employment action*

Defendant contends Ms. Salmon's lifting restriction made her unqualified for her CNA position.  According to Defendant, "a CNA at Applegate must be able to perform the duties of

---

[75] *Randle,* 69 F.3d at 451.

[76] *Green v. New Mexico*, 420 F.3d 1189, 1192-93 (10th Cir. 2005) (quoting *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997)).

[77] *E.E.O.C. v. Prof'l Bureau of Collections of Maryland, Inc.*, 686 F. Supp. 2d 1151, 1158 (D. Colo. 2010) (quoting *Tyler v. RE/MAX Mountain States, Inc.,* 232 F.3d 808, 814 (10th Cir. 2000)).

[78] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

her job, which include assisting patients as they get in and out of the shower or bathtub, on and off the toilet, and in and out of bed or a chair, when changing patient positions and correcting body alignment, and when making occupied beds, as well as other tasks.[79]  Defendant states that in order "[t]o perform these duties, a CNA needs to be able to lift more than 25 pounds."[80] Ms. Salmon argues that whether she remained qualified for her position is a disputed issue of fact because the lifting requirement "is not an essential job function, it is only a marginal function of her job[.]"[81]  Ms. Salmon asserts that she "has presented evidence that almost none of her time was spent lifting more than 25 pounds; that often assistance was available to lift more than 25 pounds; and that her experience on the job was that the necessity to lift more than 25 pounds, unassisted, was rare."[82]

The Tenth Circuit has consistently recognized that courts "must 'look at the facts as they appear to the person making the decision to terminate [the employer].'"[83]  "Moreover, '[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance.'"[84]  "[T]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair[,] or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those believes."[85]  The court should not "second guess an employer's business judgment."[86]

---

[79] Motion at 2.

[80] *Id.*

[81] Opposition at 11–13.

[82] *Id.* at 13.

[83] *Guyton v. Ottawa Truck Div., Kalmar Indus. U.S.A., Inc.*, 15 F. App'x 571, 577 (10th Cir. 2001) (quoting *Kendrick,* 220 F.3d at 1231).

[84] *Classe v. Whirlpool Corp.*, 35 F. App'x 792, 794 (10th Cir. 2002) (quoting *Furr v. Seagate Tech., Inc.,* 82 F.3d 980, 988 (10th Cir. 1996)).

[85] *Stover v. Martinez,* 382 F.3d 1064, 1076 (10th Cir. 2004) (citation and internal quotation marks omitted).

[86] *Id.*

Because the employer's *perception of the facts* at the time of the decision to terminate controls, Ms. Salmon's argument—that the lifting requirement is not an essential job function—fails to establish pretext.  The undisputed facts show that (1) Ms. Salmon's job description stated that CNAs need to occasionally lift and carry items weighing up to 50 pounds or greater;[87] (2) although Ms. Salmon contends that the patients she saw on a regular basis in January 2012 did not normally require her to lift over 25 pounds.  She admits, however, that she could not anticipate every situation or if or when her work environment might change;[88] (3) Defendant deemed the duties listed in the Job Description and the duties listed by Ms. Salmon in her deposition to be essential functions of the CNA job;[89] and Defendant's expert witness has explained that some tasks involve lifting loads of over 25 pounds, and Ms. Salmon concedes that some tasks may require lifting over 25 pounds.[90]

Even if it is assumed that the lifting requirement is not an essential job function and is only a marginal function as Ms. Salmon contends, Ms. Salmon cannot show that Defendant's legitimate, nondiscriminatory reason for terminating her employment is "unworthy of credence[.]"[91]  "Under *McDonnell Douglas,* [the court's role] . . . isn't to ask whether the employer's decision was "wise, fair or correct, but whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [it gave for its conduct] and acted in good faith on those beliefs."[92]

> To support an inference of pretext, to suggest that something more nefarious might be at play, a plaintiff must produce evidence that the employer did more than get it wrong. He or she must come forward with evidence that the employer

---

[87] Undisputed Facts ¶ 1.

[88] *Id.* ¶ 9.

[89] *Id.* ¶¶ 4, 25.

[90] *Id.* ¶ 26.

[91] *Morgan,* 108 F.3d at 1323.

[92] *Johnson v. Weld Cty., Colo.,* 594 F.3d 1202, 1211 (10th Cir. 2010) (quoting *Rivera v. City & County of Denver,* 365 F.3d 912, 925 (10th Cir. 2004)).

didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda.[93]

Ms. Salmon has failed to produce any evidence to show that Defendant did not honestly believe their reason given for terminating Ms. Salmon's employment.  The only evidence that Ms. Salmon advances is her subjective opinion and belief that she remained qualified for her position because she rarely lifted more than 25 pounds.  Even if lifting more than 25 pounds was rare in Ms. Salmon's position, it is undisputed that it is nevertheless still a possibility.[94]  Ms. Salmon's argument is insufficient to support an inference of pretext.  Had Ms. Salmon presented evidence that other CNAs with lifting restrictions were allowed to continue working in their position, then there would be reason to infer that Defendant "didn't really believe its proffered reason[] for action and thus may have been pursuing a hidden discriminatory agenda."[95]  However, the only conclusion permitted based on the evidence presented and the undisputed facts is that Defendant honestly believed that Ms. Salmon's lifting restriction made her unqualified for her CNA position and Defendant acted in good faith upon this belief.

(b)     *Ms. Salmon has failed to show that there is a genuine dispute of material fact that Defendant acted contrary to an unwritten policy or contrary to a company practice.*

Ms. Salmon argues that "[t]here is evidence that Defendant would provide light duty work to those employees who had medical restrictions because of an on-the-job injury."[96]  The evidence that Ms. Salmon is referring to are two statements in her Declaration, where Ms. Salmon states:

---

[93] *Id.*

[94] Undisputed Facts ¶ 9.

[95] *Weld Cty., Colo.*, 594 F.3d at 1211.

[96] Opposition at 11.

It was common knowledge to many of the employees of Defendant that should you be injured on the job, the Defendant would provide you with light duty work while you recovered.[97]

I know of one employee who was a CNA (the same job I had), who was injured on the job by hurting her knee so she could not lift or bend. She was given the light duty work, by the Defendant, of using the computers and manning the phones, while her more difficult patients were seen by Defendant's CNA scheduler.[98]

As further evidence of her contention, Ms. Salmon also cites to her response to an interrogatory question:

INTERROGATORY NO. 6: State with particularity the factual basis for the statement make [*sic*] in paragraph 18 of the Complaint that you were treated differently than other employees because of your pregnancy status; identify any other Applegate employee with a lifting restriction due to a temporary injury and how the employee was treated.

RESPONSE: I was required to go on leave and terminated because of lifting restrictions directly resulting from my pregnancy where other employees were allowed to continue to work. When the Bountiful office was moved up to the Ogden office, there was a CNA who was working at the computer because she had hurt her knee and could not lift or bend so she took over the phones and the CNA scheduler would go and see her more difficult patients; I was not given any accommodations.[99]

Even taking as true Ms. Salmon's assertion that it was common knowledge that if an employee was injured on the job Defendant would provide the injured employee with light duty work, Ms. Salmon has failed to meet her burden of showing that Defendant's proffered nondiscriminatory reason—that there were no light duty positions available at the time—is pretextual. It is an undisputed fact that there were no light duty positions available before or after Ms. Salmon took her FMLA leave.[100] Ms. Salmon's assertion that she knew of a CNA who was injured and was given light duty work does not by itself create an inference of pretext

---

[97] Salmon's Declaration at 2, ¶ 6.

[98] *Id.* ¶ 7.

[99] First Set of Discovery at 10.

[100] Undisputed Facts ¶¶ 6, 12.

because there is no evidence that the other CNA was accommodated regardless of the availability of light duty work.[101] Defendant's Motion is GRANTED as to Ms. Salmon's Title VII cause of action.

### B. Ms. Salmon's FMLA Claim Fails

Although Ms. Salmon does not cite to any particular section of the FMLA statute for the basis of her claim, her FMLA cause of action is titled "Violation of FMLA – Interference with FMLA Rights."[102]  Based on this title and the allegations in support of the cause of action, it appears Ms. Salmon is pleading an FMLA interference claim arising from 29 U.S.C. § 2615(a)(1).

"To establish a claim for FMLA interference under § 2615(a)(1), an employee must show '(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights.'"[103]  "In order to satisfy the second element of an interference claim, the employee must show that she was prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave."[104]  "If the employee can demonstrate that the first two elements of interference are satisfied, the employer then bears the burden of demonstrating that the adverse decision was not 'related to the exercise or attempted exercise of [the employee's] FMLA

---

[101] Ms. Salmon is incorrect in her argument that *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 191 L. Ed. 2d 279 (2015) creates "a factual dispute as to whether or not Defendant discrimination by failing to offer Salmon reasonable accommodations or light duty during the remainder of her pregnancy." Opposition at 15. *Younger* involved different factual circumstances than the instant case.

[102] Complaint at 7.

[103] *Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1132 (10th Cir. July 25, 2014) (quoting *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)).

[104] *Campbell*, 478 F.3d at 1287–88.

rights.'"[105]  The employer, however, "is not required to show that the adverse employment decision and the employee's FMLA request are completely and entirely unrelated."[106]  Such that, an "indirect causal link between dismissal and an FMLA leave is an inadequate basis for recovery[.]"[107]

Assuming the first two elements of interference are satisfied, Ms. Salmon's interference claim nevertheless fails because Defendant's action was unrelated to the exercise or attempted exercise of Ms. Salmon's FMLA rights.  It is undisputed that Ms. Salmon would have been terminated regardless of whether she had taken FMLA leave.[108]  "'[A]n employee may be dismissed, preventing her from exercising her statutory right to FMLA leave [or reinstatement after leave] . . . if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave.'"[109]  Also, Ms. Salmon conceded to be true that she "has not alleged that Applegate fired her because she took FMLA leave."[110]  "A reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory."[111]  Accordingly, Ms. Salmon's FMLA interference claim fails as a matter of law.

### C.  Ms. Salmon's UADA Claim Fails

Ms. Salmon alleges a violation of the UADA. Defendant contends that this court lacks jurisdiction over Ms. Salmon's UADA claim because Ms. Salmon did not exhaust her

---

[105] *Dalpiaz*, 760 F.3d at 1132 (quoting *Campbell*, 478 F.3d at 1287)).

[106] *Id.*

[107] *Id.* (internal quotation marks and citation omitted).

[108] Undisputed Facts ¶ 27.

[109] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (quoting *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002)).

[110] Undisputed Fact ¶ 25.

[111] *Bones v. Honeywell*, 366 F.3d 869, 877 (10th Cir. 2004).

administrative remedies as to the UADA claim.[112]  Utah case law is unclear on the issue of whether a federal district court has jurisdiction over a plaintiff's UADA claim.  This issue came before the Utah Supreme Court recently.[113]  The Court first underscored that it would "not decide whether the federal district court has jurisdiction over the Plaintiff's UADA claims . . . . [because the Court was] not presented with full briefing or a full record concerning these issues."[114]  The Court did, however, "note that . . . [Plaintiff] faces serious jurisdictional problems as to these claims . . . ."[115]  "First, the commencement of the Plaintiff's federal law claims may bar the continuation of her UADA claims under the plain language of the Act.  Further, she may have failed to exhaust her administrative remedies under the UADA with respect to the individual defendants."[116]

The plain language of the UADA[117] and cases interpreting it[118] suggest that Ms. Salmon may only pursue her claim for a remedy under the UADA by following the administrative procedures contained in the Act.  The UADA describes an administrative process to seek relief for discrimination, and provides that "[t]he procedures contained in this section are the exclusive remedy under state law for employment discrimination based upon . . . sex."[119]  Ms. Salmon

---

[112] Motion at 8–9.

[113] *Endow v. Utah Transit Auth.*, No. 20140024-SC, 2015 WL 4394047, at *1 (Utah July 17, 2015)

[114] *Id.* at *1, n. 4.

[115] *Id.*

[116] *Id.*

[117] *See* Utah Code Ann. § 34A–5–107(15)–(16); *see also Blauer v. Dep't of Workforce Servs.,* 2014 UT App 100, ¶ 12, 331 P.3d 1 (recognizing that filing federal law claims, including the transfer of a request for agency action to the federal EEOC, results in the plaintiff losing his claims under the UADA); *McNeil v. Kennecott Utah Copper Corp.,* No. 2:08-CV-41-DAK, 2009 WL 2554726, at *5–6 (D. Utah Aug. 18, 2009) *aff'd sub nom.McNeil v. Kennecott Holdings,* 381 Fed.Appx. 791 (10th Cir. 2010) ("[A]ny claims Plaintiff may have had under the UADA were terminated by his choice to pursue his federal discrimination claims under Title VII. . . . [His UADA] claims are barred and should be dismissed.").

[118] *See Buckner v. Kennard,* 99 P.3d 842, 852 (Utah 2004); *Blauer v. Workforce Servs.,* 331 P.3d 1, 6 (Utah Ct.App.2014).

[119] Utah Code Ann. § 34A–5–107(15)(c).

acknowledges that she "did file a complaint with the Commission and then timely asked and received from the Commission a right to sue letter under federal law."[120]  Ms. Salmon argues that "[s]uch a request results in the automatic withdrawal of Salmon's UADA claim, not a dismissal of her claim.  This means that [she] has exhausted all her administrative remedies by law."[121]  Ms. Salmon concludes that "[s]ince under the UADA Salmon has exhausted her administrative remedies, the only judicial review available to Salmon of her UADA claims is by either filing a state district court case or filing a pendent claim in federal district court."[122]

Ms. Salmon's contention that she has exhausted all her administrative remedies by requesting a right to sue letter is incorrect.  "'[T]o prove a violation of the [UADA], the Act requires that the aggrieved party file a request for agency action with the Division of Antidiscrimination and Labor.  After the Department of Adjudication has reviewed the charge against the employer and *made a decision*, then the order may be subject to judicial review.'"[123]  Thus, by withdrawing her claim from the UALD and requesting a notice of right to sue before a decision was rendered by the UALD, Ms. Salmon failed to exhaust her administrative remedies under the UADA.  Ms. Salmon's failure to exhaust her administrative remedies bars the continuation of her UADA claim.  Accordingly, Defendant's Motion is GRANTED as to Ms. Salmon's UADA cause of action.

---

[120] Opposition at 14.

[121] *Id.*

[122] *Id.*

[123] *Endow v. Utah Transit Auth.,* No. 20140024-SC, 2015 WL 4394047, at *1, n. 3 (Utah July 17, 2015) (quoting *Horvath v. Savage Mfg., Inc.,* 18 F.Supp.2d 1296, 1305 (D. Utah 1998)).

## ORDER

IT IS HEREBY ORDERED that Defendant's motion[124] for summary judgment is

GRANTED. The Clerk is directed to close the case.

Dated February 1, 2016.

BY THE COURT:

David Nuffer
United States District Judge

---

[124] Defendant Applegate Homecare & Hospice, LLC's Motion for Summary Judgment with Supporting Points and Authorities, docket no. 30, filed December 15, 2015.